601 P.2d 307

Joseph W. FREI and Lorraine J. Frei, husband and wife, Plaintiffs/Cross-Defendants/Appellees,

and

C. Richard Bloomfield and Jacquelyn A. Bloomfield, husband and wife, Defendants/Cross-Defendants/Appellees,

v.

John T. HAMILTON, III, Defendant/Cross-Claimant/Appellant.

No. 2 CA–CIV 3131.

Court of Appeals of Arizona, Division 2.

July 12, 1979.

Rehearing Denied Sept. 12, 1979.

Review Denied Oct. 10, 1979.

Lovallo & Stirton by Charles P. Stirton, Tucson, for plaintiffs/cross-defendants/appellees Frei.

Joseph H. Soble, P. C. by Joseph H. Soble, Tucson, for defendants/cross-defendants/appellees Bloomfield.

Wilson & Thompson by Carol Wilson, Tucson, for defendant/cross-claimant/appellant Hamilton.

## OPINION

HATHAWAY, Judge.

Appellees Frei brought this action against the Bloomfields and Hamilton on an accelerated promissory note. The Bloomfields and Hamilton answered and asserted cross-claims against each other. The matter was tried to the court sitting without a jury, which entered judgment for the Freis against the Bloomfields and Hamilton. The Bloomfields prevailed against Hamilton on the cross-claims. Hamilton's motion for a new trial was denied and this appeal ensued.

Appellant Hamilton questions on appeal whether (1) appellees' right to accelerate was waived; (2) the notice of acceleration was sufficient; (3) the payment tendered precluded liability for interest, costs and attorney's fees; (4) the Bloomfields were entitled to indemnity from appellant and to attorney's fees and costs against appellant. We find no basis for reversal.

In February 1975, the Bloomfields, the beneficiaries of Trust No. 5240, with Arizona Title Insurance & Trust Company, entered into a real estate transaction in which real property in Trust No. 5240 was transferred to Hamilton as beneficiary of the trust. The Bloomfields received as part of their consideration a promissory note dated February 5, 1975, in the principal sum of $7,500 with interest at 9%. Payments were due monthly in an amount of not less than $75 until February 5, 1982, at which time the balance was due.

The Arizona Title Insurance & Trust Company as trustee of Trust No. 5240 signed the note as maker. Hamilton also signed the note at Bloomfields' request.

There is no indication on the note in what capacity he signed. The note provided:

"Should default be made . . . then the whole sum . . . shall become immediately due and payable at the option of the holder . . . . The makers and endorsers waive grace, presentment, claim of homestead exemption, or rights of exemption, demand, notice of dishonor and protest."

At Hamilton's request, the note was payable at Country Escrow Service in Tucson. An escrow account was established with the Bloomfields as payees and Hamilton and Arizona Title Insurance & Trust Company, as trustee of Trust No. 5240, as payors.

In February 1975, the Freis conveyed real property to the Bloomfields in exchange for, inter alia, the right to payment under the note. The Bloomfields guaranteed payment according to the note's terms in the event of default. Country Escrow Service apparently attempted to reduce the guarantee agreement to writing in the form of a "Collateral Assignment of Beneficial Interest." Hamilton was unaware of the assignment until approximately two to four weeks before the lawsuit was filed.

After February 5, 1975, payments were made and received at Country Escrow Service. On February 26, 1975, the Bloomfields changed the payee to the Freis. The payments became delinquent on two occasions. The first time, the Freis notified the Bloomfields, who in turn notified Hamilton. He brought the payments up to date. The second time, in November 1976, the Freis again notified the Bloomfields, who again contacted Hamilton. He told them that he did not believe he had signed the note and had no intention of making additional payments on it. Hamilton had, by the time of the second default, transferred his interest in the trust to a third party. Although admittedly this had no effect on his liability to the payees, the third party was to assume liability on the note as between herself and Hamilton. Hamilton and the Bloomfields disagree as to whether he was to be given a period of time to consult an

attorney. We defer to the trial court's resolution of this factual issue in favor of the Bloomfields.

The Bloomfields advised the Freis of the situation and on November 26, 1976, the Freis commenced the instant lawsuit and the complaint was served on the Bloomfields. On November 30, 1976, an amended complaint was filed and served on the Bloomfields and Hamilton as defendants. On December 9, 1976, at 11:15 a. m., Hamilton was served with the Bloomfields' cross-claim, seeking indemnification in the event a judgment was entered against them.

On that same date, at approximately 1:30 p. m., Hamilton appeared at Country Escrow Service with a check in the sum of $378.75, payable at Country Escrow Service. The receptionist gave Hamilton a receipt for that sum. The receipt did not bear the usual stamp, "Subject to Acceptance." Country Escrow Service cashed the check and sent its own check to the Freis in the sum of $371.25, i. e., the amount paid by Hamilton less its service charge. The Freis returned the check to Country Escrow Service with instructions not to accept payments on the account. Country Escrow then returned the entire amount to Hamilton.

■ On appeal, appellant first contends that the Freis were not entitled to proceed with the lawsuit after "their" collection agent cashed and issued a receipt for Hamilton's check. He argues that when a party to a contract permits the breaching party to perform, he waives the breach. We accept this general proposition, but disagree that it applies to the facts of this case.

■ A collection agent's authority is limited by ordinary principles of agency law. See *Land-Air, Inc. v. Parker,* 103 Ariz. 1, 435 P.2d 838 (1967). Country Escrow Service was only authorized to act as a conduit of funds from Hamilton to the payee. Hamilton knew this. Before Hamilton paid the delinquent sum to the agent, the Freis had effectively elected to accelerate the note (see discussion infra). Hamilton also knew this. Country Escrow had no authority to waive this acceleration.

■ Appellant's reliance on *Browne v. Nowlin,* 117 Ariz. 73, 570 P.2d 1246 (1977) and *Holsclaw v. Catalina Savings & Loan Association,* 13 Ariz.App. 362, 476 P.2d 883 (1970), is misplaced. Payment to the authorized agent undoubtedly entitles the payor to credit upon the obligation. Neither of the cases cited, however, authorizes the obligor to negate an election to accelerate by tendering the delinquent sum to the agent. In *Browne,* the issue was whether the payor was in default when the payee elected to accelerate, not whether the agent's acceptance of delinquent payments waived valid acceleration. In *Holsclaw,* the issue was whether the recipient of funds was an authorized collection agent, not whether the agent had authority to accept payment after the payee elected to accelerate.

■ Appellant disputes the validity of the election to accelerate, specifically contending that he was entitled to notice of the Freis' intent to exercise their option to accelerate. To validly exercise an option to accelerate, the majority of jurisdictions require the payee (1) to present the note for payment and demand payment and (2) to affirmatively exercise the option. Annot., 5 A.L.R.2d 968 (1949); 10 C.J.S., Bills and Notes § 251 (1938). No notice of the election itself is necessary. Annot., supra, at 981; 10 C.J.S., supra, at 750–51.

■ Assuming arguendo the provision waiving presentment and demand is inapplicable to an election to accelerate, e. g., *Parker v. Mazur,* 13 S.W.2d 174 (Tex.Civ. App.1928), we believe the following testimony evidences a waiver of presentment and an adequate demand. Mr. Bloomfield testified:

"Q. Did Mr. Frei advise you on a second occasion that the note was in default?

A. Yes, he did.

Q. And did he make demand on you to either have it—to make it current, or to have Mr. Hamilton make it current, or do something—

A. He asked me to contact Mr. Hamilton.

Q. Did you do that?

A. I did.

Q. To the best of your knowledge did Mr. Hamilton make the note current?

A. No. He came over to my office and we had a lengthy discussion, and he told me that he had no intentions of making any further payments on the note.

Q. Did he give you—

A. He said that he did not believe that he signed the note. And I tried to get him to substitute some kind of collateral at the time—there was a problem with a particular property—and he refused to do that. As a matter of fact, he said he would be challenged to meet me in court. He found that challenging.

Q. And after that conversation did you advise Mr. Frei that probably Mr. Hamilton was going to default on the note and not make it current?

A. Yes, I did."

10 C.J.S., supra, § 361 at 881–82; see *Dickson v. Dickson,* 324 S.W.2d 422 (Tex. Civ.App.1959).

As for the act affirmatively exercising the option, instituting suit for the whole debt is sufficient. Annot., supra, at 975; 10 C.J.S., supra, at 750–51. The acceleration, therefore, was valid.

Appellant contends that under appropriate circumstances, equity will prohibit acceleration of a note. *Arizona Coffee Shops, Inc. v. Phoenix Downtown Parking Association,* 95 Ariz. 98, 387 P.2d 801 (1963); *Baltimore Life Insurance Co. v. Harn,* 15 Ariz.App. 78, 486 P.2d 190 (1971). Assuming arguendo that this rule applies to an unsecured note, nothing appears in the record before us disclosing appropriate circumstances. As we recently stated in discussing the election to invoke an acceleration clause:

"We do not believe that appellees' insistence that they be paid according to the terms of the note and deed of trust constitutes harsh, oppressive, or inequitable conduct." *Ciavarelli v. Zimmerman,* 122 Ariz. 143, 593 P.2d 697 (1979).

Appellant contends that a tender of all installments due relieves him of liability for further interest, costs and attorney's fees, citing A.R.S. Sec. 44–2571, which provides:

"A. Any party making tender of full payment to a holder when or after it is due is discharged to the extent of all subsequent liability for interest, costs and attorney's fees."

In view of appellant's notice that the promissory note had been accelerated and that the full unpaid balance was due, the amount tendered was insufficient to bring him within the protection of the statute.

Appellant contends that despite his failure to affirmatively plead the statute of frauds as a defense to the Bloomfields' claim for indemnification, the issue is properly before us because it was tried by consent below. Assuming arguendo that the statute is an issue on appeal, we disagree that it applies. When the leading object of the guarantor is to serve his own purpose, the promise is not within the statute. *Yarbro v. Neil B. McGinnis Equipment Co.,* 101 Ariz. 378, 420 P.2d 163 (1966); A. Corbin, Contracts, Secs. 366, 370 (1950). In this case, the guaranty was given in consideration for real property. Because the guarantor's leading object was to obtain this real property, the statute is inapplicable.

The judgment is affirmed and the appellees Bloomfield are awarded their attorney's fees on this appeal in the sum of $750.

RICHMOND, C. J., and HOWARD, J., concurring.