Robert I. GREENBERG; Rose Greenberg; Maynard Greenberg, as Co–Trustees of the Mal Greenberg Testamentary Trust, Plaintiffs–Appellees,

v.

SERVICE BUSINESS FORMS INDUS-TRIES, INC.; Service Computer Forms Industries, Inc., Defendants–Appellants.

No. 88–1636.

United States Court of Appeals, Tenth Circuit.

Aug. 17, 1989.

John T. Edwards (Sarah H. Stuhr with him, on the brief) of Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, Okl., for plaintiffs-appellees.

Richard C. Ford (J. Clay Christensen with him, on the brief) of Crowe & Dunlevy, Oklahoma City, Okl., for defendants-appellants.

Before LOGAN, BRORBY, and EBEL, Circuit Judges.

PER CURIAM.

Service Business Forms Industries, Inc. (Service Business) and Service Computer Forms Industries, Inc. (Service Computer), defendants, appeal the district court's order granting plaintiffs partial summary judgment on their claim for recovery of an accelerated debt allegedly due under Service Business' promissory note. The district court determined that there were no material issues of fact as to Service Business' default under the terms of the promissory note and that plaintiffs properly exercised their right to accelerate the unpaid principal balance and accrued interest. On appeal, defendants contend there are genuine issues of fact regarding each of its defenses.

Plaintiffs are co-trustees of the Mal Greenberg Testamentary Trust (the Trust). On October 29, 1982, plaintiffs entered into a stock redemption agreement with Service Computer, a Nevada corporation presently owned and operated by Carolyn and Laurance Wolfberg. The Wolfbergs are the sister and brother-in-law of Robert Greenberg (Greenberg), a plaintiff and a trustee of the Trust. Under the stock redemption agreement, the Trust transferred all the shares it owned in Service Computer back to the company in exchange for $102,000. Of this amount, $2,000 was to be paid at closing and $100,000 was to be paid pursuant to the promissory note at issue here.

Pursuant to the stock redemption agreement, Service Business, an affiliate of Service Computer which is also operated by the Wolfbergs, executed a $100,000 promissory note on October 29, 1982, the closing date of the stock redemption agreement. The note provided for annual payments to be calculated on a twenty-year amortization schedule with full payment to be made on the tenth anniversary of the note's execution. The note further stated that the Trust had the option to accelerate the debt and demand full payment if Service Business defaulted on any of its obligations under the note. The note did not specify a specific due date for the annual payments. In addition to this written agreement, Service Business alleged that Greenberg promised to execute a disclaimer of any interest he had as a beneficiary under the Trust. Greenberg denied that he ever made such an agreement.

By April, 1986, Service Business had made only one payment on the note, in the amount of $5,000. As a result of further negotiation between the parties, Greenberg executed a written disclaimer in favor of Service Computer under which Greenberg disclaimed any interest he might have through inheritance in the family jewelry. The disclaimer was conditioned on Service Business' payment of all past due amounts owing under the promissory note and upon its "timely payment" of all future installments. The disclaimer also failed to designate a specific date for the future annual payments. Thereafter, Service Business paid $43,231.86 on June 26, 1986, which included partial payment of the 1986 installment. On November 6, 1986, not having received the payment from Service Business which they considered due on October 29, 1986, plaintiffs sent Service Business a notice of their intention to accelerate payment of the note. On November 14, 1986, and again on October 29, 1987, Service Business tendered payment of the installment amount owing, calculated as of the anniversary date of the note. On both occasions, plaintiffs refused to accept the payments.

Plaintiffs brought this action to recover the accelerated amount of the principal and

accrued interest under the note. In its answer, defendants raised several defenses, including waiver, estoppel, and lack of default under the terms of the note. Defendants also filed a counterclaim, alleging failure of consideration by virtue of Greenberg's refusal to execute a disclaimer of any interest in the Trust funds. Plaintiffs moved for summary judgment and, after a hearing, the district court granted partial summary judgment in their favor. The court found that the terms of the contract clearly designated the payments to be due on October 29th of each year, by virtue of the date of the note's execution and the fact that annual payments were calculated on the basis of a twenty-year amortization. The court further held that there were no material issues of fact as to waiver, estoppel, or default and found that Business Service had defaulted on its payment obligations, that the Trust had the right to accelerate the balance owing upon default, and that the Trust properly exercised its right to accelerate. The court ruled, however, that there were material issues of fact regarding the issue of whether Service Business received full consideration for the stock redemption agreement with the Trust because Greenberg allegedly failed to issue a disclaimer of any interest as beneficiary under the Trust. This last issue was presented to the jury, which returned a verdict in favor of Greenberg and the Trust.

On appeal, Service Business contends that there are several genuine issues of fact which precluded the granting of partial summary judgment. First, Service Business contends that it did not default on its obligations under the note because the document did not specify a date on which payment was due, and argues under Oklahoma law that payment was thereby due within a reasonable time. We disagree. Oklahoma statute dictates that contracts

are to be interpreted according to the intent of the parties at the time the instrument was executed. Okla.Stat. tit. 15, §§ 152, 153 (1981). Intent must be determined by construing the contract as a whole, and the court must construe the contract so as to give effect to each provision. *Amoco Prod. Co. v. Lindley,* 609 P.2d 733, 741 (Okla.1980). The language of the note setting the date of final payment as October 29, 1992, and the method for calculating the amount of annual payments clearly indicate that the parties intended that payments were to have been made on the anniversary date of the note.[1]

Second, Service Business asserts that plaintiffs did not accelerate the note in good faith. Service Business claims the duty of good faith arises both under the Uniform Commercial Code (UCC), Okla. Stat. tit. 12A, § 1–208 (1981), and under the common law doctrine of good faith in the performance of a contract. Section 1–208 provides:

> A term providing that one party ... may accelerate payment or performance or require collateral or additional collateral "at will" or "when he deems himself insecure" or in words of similar import shall be construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised.

*Id.; see also Mitchell v. Ford Motor Credit Co.,* 688 P.2d 42, 44–45 (Okla.1984) (acceleration by a secured party). In finding that plaintiffs properly exercised their power of acceleration, the district court implicitly found that the good faith requirement set forth in § 1–208 does not apply to notes that permit acceleration at the option of the holder upon default by the debtor. We agree.

---

1. Service Business relies on Okla.Stat. tit. 15, § 173 (1981), which states that the law implies a reasonable time for payment when no date is provided for performance of a contractual obligation. But the law implies a reasonable time for payment only when the contract is ambiguous and the intention of the parties cannot be determined from the express language and terms of the contract. *See id.* § 154; *Lindhorst v. Wright,* 616 P.2d 450, 453 (Okla.App.1980). Because the terms of the agreement as a whole clearly indicate a time for payment, this rule cannot appropriately be applied to the promissory note at issue in this case.

The only Oklahoma case we have located which addresses the question of whether the good faith requirement under the UCC applies to acceleration on default clauses is *Knittel v. Security State Bank, Mooreland, Okla.,* 593 P.2d 92 (Okla.1979). The case did not directly address the issue; however, it upheld a challenged jury instruction which stated that the good faith requirement under § 1–208 did not apply to an acceleration on default clause. *Id.* at 97. Because a court must determine whether a challenged jury instruction properly states the applicable law, *see Big Horn Coal Co. v. Commonwealth Edison Co.,* 852 F.2d 1259, 1271 (10th Cir.1988), it logically follows that *Knittel* supports the position that the UCC good faith requirement does not apply to acceleration on default clauses.

Several states have similarly held that the UCC good faith requirement is not applicable when the acceleration clause is based on an event in the debtor's complete control. *E.g. Brummund v. First Nat'l Bank,* 99 N.M. 221, 656 P.2d 884, 887 (1983) (relying on North Carolina law); *Bowen v. Danna,* 276 Ark. 528, 637 S.W.2d 560, 564 (1982); *In re Sutton Invs., Inc.,* 46 N.C.App. 654, 266 S.E.2d 686, 690 (1980); *Crockett v. First Fed. Sav. & Loan Ass'n,* 289 N.C. 620, 224 S.E.2d 580, 588 (1976). *But see Brown v. AVEMCO Inv. Corp.,* 603 F.2d 1367, 1375–80 (9th Cir.1979) (comparing the applicability of UCC § 1–208 on "default" acceleration clauses as opposed to "insecurity" acceleration clauses under Texas law). Because of the ruling in *Knittel* and the general consensus in other jurisdictions, we conclude that Oklahoma would not apply the good faith requirement in § 1–208 to the acceleration on default clause at issue in this case.

Service Business also claims that plaintiffs failed to perform their contract in good faith under common law equitable principles. Service Business relies on *Brown v. AVEMCO Inv. Corp.,* in which the Ninth Circuit applied the common law doctrine of good faith to a due-on-lease clause contained in a security agreement executed in conjunction with a promissory note.[2] 603 F.2d at 1375–79. In reversing a jury verdict in favor of the creditor, the court noted that, under Texas law, acceleration clauses are designed to protect a creditor from conduct or events that jeopardize or impair the creditor's security. *Id.* at 1376. The court held that the jury should have been instructed on the issue of the creditor's good faith in exercising the due-on-lease clause when evidence existed that it inequitably desired to take advantage of a technical default, not because it in good faith feared its security was impaired. *Id.* at 1379. This decision was based on Texas case law which clearly mandated that equitable considerations should be applied when a creditor exercises an optional right to accelerate for the sole purpose of receiving the entire payment rather than for the purpose of protecting its debt. *Id.* We must determine whether Oklahoma would likewise impose an equitable duty on a creditor to not use the power of acceleration when its security is not impaired.

The Oklahoma Supreme Court has ruled on two occasions that an acceleration clause contained in a mortgage will not be enforced where the conduct of the mortgagee has been unconscionable or inequitable. *Continental Fed. Sav. & Loan Ass'n v. Fetter,* 564 P.2d 1013, 1019 (Okla. 1977); *Murphy v. Fox,* 278 P.2d 820, 826 (Okla.1955). In *Continental,* the court denied a bank's request to accelerate and foreclose on a mortgage based on a due-on-transfer clause when the bank refused to consent to a transfer solely because the

---

2. Under the security agreement, the creditor, AVEMCO, had the option to accelerate the entire debt if the debtor leased the property, an airplane, without its written consent. In 1973, the debtor leased the airplane to a third party and also executed an option to purchase. The debtor sent notice of the agreement to AVEMCO. Two years later, the lessee exercised its option to purchase and tendered full payment of the remainder owing under the promissory note. AVEMCO, after two years of inaction, refused the tendered payment and instead exercised its option to accelerate under the due-on-lease clause but also demanded an additional sum for the cost of insurance premiums. After the debtor refused to pay the additional amount, AVEMCO repossessed the airplane and sold it for a higher profit. 603 F.2d at 1369.

mortgagor would not pay a substantial transfer fee. The transfer fee was an additional condition unilaterally imposed by the bank and was not contained in the original mortgage agreement. The court held the bank's conduct in demanding additional payment was unconscionable and denied its requested relief. 564 P.2d at 1019.

In *Murphy,* the court refused to permit a mortgagee to accelerate the maturity of a promissory note because the court found that the mortgagee had attempted to hinder timely payment by the mortgagor and had encouraged its default. 278 P.2d at 824. The court determined that this conduct was motivated solely by the mortgagee's desire to accelerate the maturity of the entire debt and held that the technical default of tendering late payment of taxes was insufficient to justify acceleration when the mortgagee had acted unconscionably. *Id.* at 826.

According to our reading of these cases, whether the Oklahoma court permits acceleration depends on the conduct of the mortgagee and whether he has dealt fairly with the debtor or has acted oppressively or unconscionably. This view is consistent with that of several other jurisdictions. *See Phipps v. First Fed. Sav. & Loan Ass'n,* 438 N.W.2d 814, 819 (S.D.1989) (an acceleration clause will be enforced absent fraud, bad faith, or other conduct on part of the mortgagee which would make it unconscionable to enforce the clause); *Key Int'l Mfg., Inc. v. Stillman,* 103 A.D.2d 475, 480 N.Y.S.2d 528, 530 (1984) (absent some element of fraud, exploitative over-

reaching or unconscionable conduct by the creditor, the court should enforce an acceleration clause), *aff'd as modified,* 66 N.Y.2d 924, 498 N.Y.S.2d 795, 489 N.E.2d 764 (1985); *Bowen v. Danna,* 637 S.W.2d at 564 (a court in equity can relieve a debtor from the hardship of acceleration based on accident, mistake, fraud, or inequitable conduct of the creditor); *First Fed. Sav. & Loan Ass'n v. Ram,* 135 Ariz. 178, 659 P.2d 1323, 1325 (Ct.App.1982) (same); *Ciavarelli v. Zimmerman,* 122 Ariz. 143, 593 P.2d 697, 698–99 (Ct.App.1979) (same).

■ Nothing in the record warrants an application of these equitable principles in the instant case. Plaintiffs did not exercise their option to accelerate after a considerable delay. *See, e.g., Brown,* 603 F.2d at 1379; *Caspert v. Anderson Apartments, Inc.,* 196 Misc. 555, 94 N.Y.S.2d 521, 526 (Sup.Ct.1949). Nor did the default concern a technical, secondary obligation such as payment of taxes.[3] Rather, the default violated the essence of the written agreement, timely payment of principal and interest.[4] Finally, no evidence was presented that Greenberg attempted to hinder or otherwise cause the default so as to make his conduct unconscionable.[5] Defendants had complete control over the event which triggered plaintiffs' right to accelerate. The mere fact that the plaintiffs' interest might not have been in jeopardy, without some misconduct on the part of the plaintiffs, does not warrant a refusal to enforce an acceleration clause which was a bargained-for element of the contract between the

---

3. In *Murphy,* the court discussed several cases from other jurisdictions which considered a technical default to be a failure to comply with a secondary obligation such as payment of taxes or assessments as opposed to a default on payment of principal or interest. *See* 278 P.2d at 825. Generally, these cases consider a default in payment of a principal or interest payment to be a substantial breach rather than a technical default. *See e.g., Graf v. Hope Bldg. Corp.,* 254 N.Y. 1, 171 N.E. 884, 885–86 (1930).

4. The court in *Continental Federal Savings & Loan Association v. Fetter* stated:

> [A]cceleration clauses are bargained-for elements of mortgages and notes to protect the mortgagee from risks connected with transfer of the mortgaged property. The underlying rationale for an acceleration clause is to in-

sure that a responsible party is in possession, to protect the mortgagee from unanticipated risks, and to afford the lender the right to be assured of the safety of his security. However, an action to accelerate and foreclose a mortgage is an equitable proceeding, and the equitable powers of the court will not be invoked to impose an extreme penalty on a mortgagor with no showing that he *has violated the substance of the agreement.*

564 P.2d at 1017–18 (footnote omitted) (emphasis added).

5. Any issue as to Greenberg's refusal to provide a disclaimer was conclusively decided by the jury, which decision is not an issue in this appeal.

parties. Under the circumstances of this case, we conclude that there are no material issues of fact under the applicable Oklahoma law regarding the enforceability of the acceleration clause and the issue of good faith.

 Service Business also asserts that plaintiffs waived their right to accelerate through their prior acceptance of late payments. Ordinarily, prior acceptance of late payments only waives the right to accelerate as to those past installments. *McGowan v. Pasol*, 605 S.W.2d 728, 732 (Tex.Civ. App.1980). When a creditor establishes a prior course of dealing in accepting late payments, the creditor is estopped from declaring total debt due on future defaults. *Id.* Estoppel does not apply, however, when the obligor gives the debtor notice that the terms of the agreement will be enforced in the future. *Id.; Dunn v. General Equities of Iowa, Ltd.*, 319 N.W.2d 515, 517 (Iowa 1982); *see also Sternberg v. Mason*, 339 So.2d 373, 376 (La.Ct.App.1976) (waiver rule has no application where obligee made frequent demands for punctual payment or accepted tardy payment as a result of unwilling or forced indulgence). Because Service Business or its officers received adequate notice by virtue of the disclaimer executed in April, 1986, that the trustees demanded all future payments to be made timely, no material issue of fact exists on the issue of waiver.

■ Defendants also argue that they did not receive a fair trial on the disclaimer issue because they were not permitted to introduce evidence concerning Greenberg's motivation in accelerating the note. Apparently, the district court refused to allow any evidence concerning the default because the issue had been decided on summary judgment. The question of whether certain evidence is relevant to an issue before the jury is within the sound discretion of the district court. *United States v. Alexander*, 849 F.2d 1293, 1301 (10th Cir. 1988). If Service Business believed evidence regarding Greenberg's motivation was relevant to its claim tried to the jury, it should have made such an objection during trial. Based on the objections contained in

the record, we do not believe the trial court abused its discretion in so ruling.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.