NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

AERIAL FUNDING LLC, *Plaintiff/Appellee*,

*v.*

MICHAEL A. VAN SICKLE, *Defendant/Appellant*.

No. 1 CA-CV 19-0543
FILED 10-20-2020

Appeal from the Superior Court in Maricopa County
No. CV2016-011531
The Honorable Christopher T. Whitten, Judge

**AFFIRMED IN PART, VACATED IN PART AND REMANDED**

COUNSEL

Davis Miles McGuire Gardner, PLLC, Tempe
By Pernell W. McGuire, Corey Torgesen
*Counsel for Plaintiff/Appellee*

Ahwatukee Legal Office, PC, Phoenix
By David L. Abney
*Counsel for Defendant/Appellant*

---

**MEMORANDUM DECISION**

Judge David D. Weinzweig delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge D. Steven Williams joined.

---

**W E I N Z W E I G**, Judge:

**¶1** Michael Van Sickle appeals from a deficiency judgment entered in favor of Aerial Funding, LLC ("Aerial"). For the following reasons, we vacate the deficiency judgment, remand for a valuation hearing and otherwise affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2** In 2007, Van Sickle borrowed more than $200,000 on a line of credit from National City Bank. The line was secured by a second-position deed of trust on real property ("Property"). Van Sickle drew more than $200,000 on the line of credit and defaulted.

**¶3** Aerial later acquired the loan and security interest from National City Bank, discovered Van Sickle had defaulted and noticed a trustee's sale for March 2015. Van Sickle obtained an injunction to stop the sale and filed for bankruptcy. Aerial opposed Van Sickle's efforts to avoid Aerial's lien in the bankruptcy proceeding.

**¶4** Van Sickle and Aerial settled their dispute in August 2016, after nearly two years of litigation. Under the settlement agreement ("Agreement"), Aerial agreed not to pursue a deficiency judgment against Van Sickle and consented to Van Sickle's voluntary dismissal of the bankruptcy proceeding in exchange for Van Sickle's agreement to vacate the Property before the trustee's sale and promise to provide documentary proof that Van Sickle's first-position mortgage was current and would remain current. If Van Sickle did not perform, however, the parties agreed that Aerial *could* bring a deficiency judgment action against Van Sickle and Van Sickle would not defend except to provide proof of his performance.

**¶5** The trustee's sale was held in September 2016. The balance on the line of credit was $284,906.59. Aerial was the highest bidder and acquired the Property with a credit bid of $56,000. Aerial soon learned Van

Sickle was not current on his first-position mortgage payments and sued Van Sickle for breaching the Agreement.

¶6          Both parties moved for summary judgment. Van Sickle admitted he "failed to make some payments due on the Agreement" and "was not current on the [first-position] loan," but explained that he had "honestly believed he was [current] at the time." The superior court found no genuine issue of material fact and granted summary judgment to Aerial, authorizing Aerial to pursue a deficiency judgment.

¶7          Van Sickle unsuccessfully moved the superior court to reconsider, arguing for the first time that the Agreement was contrary to Arizona law and public policy, unconscionable, and unenforceable because it permitted Aerial to proceed with a deficiency judgment following a nonjudicial foreclosure on a single-family residence of fewer than 2.5 acres and precluded Van Sickle from mounting a defense. The court denied the motion, finding that although "the result in this case is harsh, its harshness was invited by [Van Sickle] in entering into the Settlement Agreement." The court added "[Van Sickle] agreed to tie his own hands if he breached the Settlement Agreement[,] . . . precluding [him] from offering evidence or argument" but not from appearing or "challenging [Aerial's] evidence by objection or by cross-examination."

¶8          The court set a deficiency hearing. Van Sickle filed a written request for a fair market value determination, but the court held no separate valuation hearing. Van Sickle appeared at the December 2018 deficiency hearing, challenging the deficiency amount through witness examination. Neither party presented evidence of the property's fair market value.

¶9          The court ultimately awarded Aerial a deficiency judgment for $228,906.59 (the difference of the credit line's $284,906.59 outstanding balance and Aerial's $56,000 credit bid) plus interest, and attorney fees and costs to be determined. Van Sickle timely appealed and we have jurisdiction. A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

I.    **Contractual Waiver of Anti-Deficiency Statutory Protections Does Not Offend Public Policy.**

¶10          Van Sickle argues Arizona's "anti-deficiency statute" covers the Property and provides absolute and unwaivable protection against a deficiency judgment. The statute provides:

> If trust property of two and one-half acres or less which is limited to and utilized for either a single one-family or a single two-family dwelling is sold pursuant to the trustee's power of sale, no action may be maintained to recover any difference between the amount obtained by sale and the amount of the indebtedness and any interest, costs and expenses.

A.R.S. § 33-814(G).

¶11 We review questions involving the interpretation and application of statutes de novo. *Ramsey v. Ariz. Registrar of Contractors*, 241 Ariz. 102, 105, ¶ 6 (App. 2016) (citing *First Fin. Bank, N.A. v. Claassen*, 238 Ariz. 160, 162, ¶ 8 (App. 2015)).

¶12 Contracts are generally enforceable, but public policy may impliedly invalidate terms that waive statutory rights. *CSA 13-101 Loop, LLC v. Loop 101, LLC*, 236 Ariz. 410, 411-12, ¶¶ 6-7 (2014). To determine whether public policy invalidates the voluntary waiver of a statutory right, we consider "whether an identifiable public policy clearly outweighs the interest in enforcing [the negotiated agreement]." *Id.* at 412, ¶ 7 (citing *1800 Ocotillo, LLC v. WLB Grp., Inc.*, 219 Ariz. 200, 202, ¶ 8 (2008); Restatement (Second) of Contracts § 178 (1981)).

¶13 The anti-deficiency statute was "intended to 'protect consumers from financial ruin' and 'eliminate hardships resulting to consumers who, when purchasing a home, fail to realize the extent to which they are subjecting their assets besides the home to legal process.'" *Parkway Bank and Tr. Co. v. Zivkovic*, 232 Ariz. at 290, ¶ 16 (quoting *Helvetica Servicing, Inc. v. Pasquan*, 229 Ariz. 493, 496, ¶ 9 (App. 2012)). To that end, the statute allocates the risk of inadequate security and economic downturn to lenders. *See Parkway*, 232 Ariz. at 290, ¶ 16 (quoting *Helvetica*, 229 Ariz. at 500-01, ¶ 30).

¶14 Arizona courts have held that pre-default waiver of anti-deficiency protection offends public policy by shifting the unpredictable risks of possible default from lender to borrower. *Parkway*, 232 Ariz. at 290, ¶ 17. But, a post-default contractual waiver does not raise the same concerns because it involves predictable risks and an actual default. *See, e.g., CSA 13-101*, 236 Ariz. at 415, ¶ 24 ("Though some statutory rights may not be waived prospectively, a party may still forego enforcing them in litigation.") (citing *Forbach v. Steinfeld*, 34 Ariz. 519, 527 (1928)). Aided by counsel, Van Sickle negotiated and voluntarily entered into the settlement agreement after defaulting. The contract controls. *See Ariz. Bank*

*& Tr. v. James R. Barrons Tr.*, 237 Ariz. 401, 406, ¶ 20 (App. 2015) (concluding a guarantor could waive anti-deficiency protections in A.R.S. § 33-814(G) after finding no "compelling public policy reason that outweighs the parties' interest in enforcing an express contractual provision"); *1800 Ocotillo*, 219 Ariz. at 202, ¶ 8 (highlighting the societal value in enforcing "bargains struck between competent parties") (citing Restatement (Second) of Contracts § 178 cmt. b).

## II. Contractual Waiver of the Anti-Deficiency Statutory Protections Is Not Unconscionable.

**¶15** Van Sickle next argues his contractual waiver is substantively unconscionable and unenforceable.[1] Whether a contract is unconscionable presents a question of law reviewed de novo. *See Maxwell v. Fid. Fin. Servs., Inc.*, 184 Ariz. 82, 88 (1995) (quoting *Seekings v. Jimmy GMC of Tucson, Inc.*, 130 Ariz. 596, 602 (1981)).

**¶16** "A bargain is unconscionable if it is such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Phx. Baptist Hosp. & Med. Ctr., Inc. v. Aiken*, 179 Ariz. 289, 293 (App. 1994) (quotation omitted); *accord* Restatement (Second) Contracts § 208, cmt. b. "Substantive unconscionability occurs where a contract has 'terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity.'" *Rizzio v. Surpass Senior Living LLC*, 248 Ariz. 266, 271-72, ¶ 21 (App. 2020) (quoting *Maxwell*, 184 Ariz. at 89, and citing *Clark v. Renaissance W., LLC*, 232 Ariz. 510, 512, ¶ 8 (App. 2013)). Whether a contract is substantively unconscionable depends on "the actual terms of the contract," *Maxwell*, 184 Ariz. at 89, and terms may be unconscionable if they are "monstrously harsh" or "shocking to the conscience." *Ariz. Coffee Shops, Inc. v. Phx. Downtown Parking Ass'n*, 95 Ariz. 98, 101 (1963) (quoting *Domus Realty Corp. v. 3440 Realty Co.*, 40 N.Y.S.2d 69, 73-74 (Special Term 1943)).

**¶17** The record does not support this argument. Aerial promised to forego a deficiency judgment as long as Van Sickle performed under the settlement agreement. Moreover, Van Sickle has not shown the agreement resulted from Aerial's bad faith, fraud or willful or wanton conduct, and

---

[1] Van Sickle's unconscionability argument relies in large part upon his contention that he had an absolute right to protection from an anti-deficiency action. We rejected this argument above.

none is apparent from the record. Thus, we cannot say the relevant term was "monstrously harsh" or "shocking to the conscience." *See Ciavarelli v. Zimmerman*, 122 Ariz. 143, 145 (App. 1979) (concluding lender's "insistence" upon compliance with the contract was not "harsh, oppressive, or inequitable," especially because the lender had given the borrower a "second chance," and the borrower knew of the lender's expectations). The superior court did not err.

### III. Van Sickle Did Not Waive the Fair Market Value Protections of A.R.S. § 33-814(A).

¶18 Finally, Van Sickle argues the superior court erred when it interpreted the Agreement to waive the anti-deficiency statute's fair market value protections of A.R.S. § 33-814(A), which ensure that "the deficiency judgment shall be for an amount equal to the sum of the total amount owed the beneficiary as of the date of the sale, as determined by the court less the fair market value of the trust property on the date of the sale as determined by the court or the sale price at the trustee's sale, whichever is higher." A.R.S. § 33-814(A).

¶19 Van Sickle never waived his procedural right to a fair market valuation hearing. *See Barrons Tr.*, 237 Ariz. at 406, ¶ 22 (defining waiver as "the *express*, voluntary, intentional relinquishment of a known right") (quoting *Am. Cont'l Life Ins. v. Ranier Constr. Co.*, 125 Ariz. 53, 55 (1980)) (emphasis added). The Agreement permitted Aerial to "initiate and consummate a deficiency on the subject property subject to applicable law.

¶20 A fair market value determination is not a defense for purposes of the Agreement; it has no bearing on the validity of a claim. Rather than halt a deficiency judgment, a fair market value determination provides procedural protection so that a lender obtains a judgment for no more than is necessary to compensate for actual losses. *Barrons Tr.*, 237 Ariz. at 405-06, ¶ 17; *accord CSA 13-101*, 236 Ariz. at 412-14, ¶¶ 9-13, 17. Therefore, the superior court erroneously skipped the valuation hearing here after Van Sickle requested it.

### CONCLUSION

¶21 We affirm the superior court's decisions on whether the contractual waiver is valid and enforceable, but vacate the deficiency judgment and remand this matter for a hearing to determine the Property's fair market value in accordance with A.R.S. § 33-814(A).

**¶22** Both parties request an award of attorney fees and costs. Upon compliance with ARCAP 21(b), Van Sickle is awarded his reasonable attorney fees and costs incurred on appeal under the Agreement. A.R.S. §§ 12-341 and -341.01. Aerial's request is denied.



AMY M. WOOD • Clerk of the Court
FILED: AA